## ARBITRATION BETWEEN LANDLORD AND TENANT.

Circuit Court of Cuyahoga County.

### THE CALDWELL PIANO COMPANY v. THE GARFIELD REALTY COMPANY.

Decided, February 14, 1911.

*Arbitration—Immaterial Variations From Submission.*

An award of arbitrators will not be considered void because not final or responsive to the submission, if all the items in dispute between the parties are embraced in it, with only a few immaterial exceptions, and a time is fixed by the arbitrators for the completion of everything directed by them to be done.

*H. W. Bell* and *Horr & Lowenthal,* for plaintiff in error.
*R. E. McKisson,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This action tried in this court upon appeal from the court of common pleas was there commenced by the Caldwell Piano Company, as lessee, against the Garfield Realty Company, as lessor, for an accounting and injunction.

The plaintiff leased from the defendant the corner store room in the defendant's block, the Anisfield, located at the corner of East Ninth street and Huron road in the city of Cleveland, for a term of years commencing May 1, 1910. At that date and for some time afterwards the building in question was still unfinished, and on July 12, 1910, the parties entered into a written contract by which the landlord agreed to perform certain items of work, so as to fit the premises for occupation by July 15th, 1910; failing which, the sum of $41 per day was to be forfeited by the landlord to the tenant for each day that the work should remain uncompleted after said date. The landlord also agreed to pay three items of $100, $110 and $115, respectively, for specified extra work performed by the tenant in fitting up said store room. The landlord further agreed to remit all claims for rent up to August 1, 1910, and to refund to the tenant

the sum of $416.17 previously deposited by the tenant as a guaranty. The tenant agreed to pay rent from August 1, 1910, at the rate of $1,250 per month in advance. It was understood that the tenant might meanwhile enter into partial occupancy of the premises, and that its acceptance of keys to said storeroom should not constitute an acceptance under the lease, pending completion of the items of work to be done, a schedule of which was attached to the agreement.

On the following day the parties appointed H. C. Robinson and W. W. Davies ''as referees to superintend and determine the manner of finishing the improvements under said agreement; also the amount of rebate, if any, to · be allowed under said agreement, and in all questions pertaining to the final adjustment of the lease now existing between'' the parties. They, on their part, agreed to abide by the decision of these arbitrators.

Messrs. Robinson and Davies accepted this commission, and on August 5, 1910, rendered the following decision:

''In reference to the contract between the Garfield Realty Company and the Caldwell Piano Company, dated July 12, 1910, under the terms of which we are to act as arbitrators, it is our conclusion as such arbitrators, that the interior of the premises in question became tenantable July 27th, 1910, and therefore the Caldwell Piano Company is entitled to a rebate from the Garfield Realty Company of four hundred and ninety-two dollars ($492), (twelve days at $41 per day) as per the conditions of said contract.

''We also concluded that the Garfield Realty Company is obliged to make such connections to the heating system in said premises as are necessary in order to furnish the Caldwell Piano Company with heat throughout the entire year. It is also obligated to repair the sidewalk lights in such a manner that same will be free at all times from leakage of tar and water. This work of changing the heating system and repairing the sidewalk lights shall be done within a reasonable time after the demand of the Caldwell Piano Company.

''Our attention has been called to the unsafe condition of the glass store front facing East 9th street. It is our conclusion that this front ought to be put in a safe condition and at the expense of the Garfield Realty Company. The plans have been prepared by Mr. Wolf, architect for the Caldwell Piano Company, showing how the front can be repaired to put same in a safe condition and at the same time strengthen the frame work

of the front sufficiently to support an awning.    These plans portraying the change have been O.K.d by Mr. Caldwell on behalf of the Caldwell Piano Company for the purpose of indicating to us that if the changes proposed, as set forth in the said plans, are made, the same will be satisfactory to the Caldwell Piano Company.    We are also in receipt of a communication from John Anisfield, representing the Garfield Realty Company, authorizing us to employ Geo. A. Rutherford & Company to make said changes in accordance with said plans at his expense. As such arbitrators we have authorized Rutherford & Company to make the proposed changes and have their agreement that said work will be completed on the evening of Tuesday, August 9th, 1910. We further conclude that if said work of changing said front is not completed on the evening of Tuesday, August 9th, 1910, then the Caldwell Piano Company shall be entitled to a rebate from the Garfield Realty Company of twenty-five dollars ($25) per day for every day from and after said time that said alterations remain unfinished.''

Meanwhile, the tenant paid the August rent in advance, but because of delays in the completion of the work, which the arbitrators' decision provided should thereafter be done, the tenant refused to pay the September rent and began this action. A preliminary restraining order was obtained to prevent the tenant's dispossession for non-payment of the September rent, and since then the rent has been paid monthly into court, to await the conclusion of the litigation.

The plaintiff claims that the award is void because it is not final, or responsive to the submission, in that it leaves two things open to future controversy, viz., the repair of the store front, so as to make it safe, and the repair of the sidewalk lights, and furthermore, in that it fixes July 27th, 1910, as the date when the premises become ''tenantable,'' and when, ''therefore,'' the forefeiture of $41 per day terminated.

From our examination of the evidence it appears that, at the time of the award the sidewalk lights had been so repaired that they no longer leaked, but the arbitrators were apprehensive that they might thereafter develop leaks, and deeming it their duty to provide against this contingency, they decided that such repairs as might become necessary in this behalf should be promptly made at the expense of the landlord.

In regard to the East Ninth street front it appears that the submission contains no specific reference to this item of work to be done, but the safety of the glass front having been called in question, the opinion of an expert was sought and obtained by the arbitrators to the effect that it was probably not unsafe, but might properly, for the sake of due precaution, be further strengthened. At this juncture the question of providing some means of attaching awnings to the East Ninth street front arose for the first time, and thereupon the arbitrators sought and obtained the assent of their principals to an enlargement of the scope of their arbitration, so as to include this matter, and dispose of it in connection with the matter of the East Ninth street glass front. By consent of the principals, the arbitrators, as indicated in their award, employed George A. Rutherford & Company to perform the work in question, according to plans procured by the tenant and approved by the landlord.

This supplemental submission was partly oral and partly written, and we hold that the award is responsive thereto, notwithstanding the fact that the work was not fully completed at time the award was made.

Rutherford & Company were one day late in completing the work in the first instance, and the landlord admits a liability of $25 to the tenant on this account. The tenant, however, claims and shows that the work as thus completed, was not satisfactory, and that it was some two weeks more before it was left in workmanlike shape.

On the remaining question we hold that notwithstanding the use of the words "tenantable July 27, 1910," by the arbitrators in their award, the evidence fails to show any items of work specified in the schedule attached to the original agreement of the parties which remained undone on that date, excepting the items already discussed and disposed of.

It follows that the provision of the submission in this behalf are fully responded to by the provisions of the award that "the Caldwell Piano Company is entitled to a rebate from the Garfield Realty Company of four hundred and ninety-two

dollars ($492), (twelve days at $41 per day) as per the conditions of said contract."

This language embraces an adjudication of all the items in dispute between the parties with the immaterial exceptions hereinbefore mentioned.

We have examined the decree rendered in the court below and find it so exactly in accordance with our own views that we enter a similar judgment here.

---

## THE BUILDING OF VIADUCTS BY COUNTY COMMISSIONERS.